Minute Order Form (06/97)


JS-6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 5308 | **DATE** | 1/14/2002 |
| **CASE TITLE** | DAVID VAGNONI vs. SEARS, ROEBUCK & CO. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER: there is no genuine issue of material fact on Plaintiff David Vagnoni's ADA and ERISA claims and Sears is entitled to judgment as matter of law on those claims. Accordingly, def4ndant Sears' motion for summary judgment on the claims in Counts I-IV of plaintiff's complaint is granted. The Court declines to exercise its supplemental jurisdiction over the defamation claim Plaintiff Vagnoni asserts against Defendant Sears in Count V of the complaint, which is dismissed without prejudice to refiling in state court. This is a final and appealable order.**
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JAN 15 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | 32 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**
**JAN 1 5 2002**

| | |
|---|---|
| DAVID VAGNONI, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 98 C 5308 |
| | ) Paul E. Plunkett, Senior Judge |
| SEARS, ROEBUCK & CO., an Illinois Corporation, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

David Vagnoni has sued Sears, Roebuck & Company ("Sears") for its alleged violations of the Americans with Disabilities Act, 42 U.S.C. § 12102, et seq. ("ADA") and section 510 of the Employee Retirement Income Security Act, 29 U.S.C. § 1140, ("ERISA") and for defaming him. Defendant has filed a Federal Rule of Civil Procedure 56(c) motion for summary judgment on all of these claims. For the reasons set forth below: (1) the motion is granted as to the ADA and ERISA claims; and (2) the Court declines to exercise its supplemental jurisdiction over the defamation claim, which is dismissed without prejudice to refiling in state court.

### Facts[1]

David Vagnoni was hired by defendant in 1964. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 7.) In 1995, he worked full-time as a merchandise support associate at the Sears store in Matteson, Illinois. (Id.

---

[1] Unless otherwise noted, the following facts are undisputed.

¶¶ 7-8, 10.) As a merchandise support associate, plaintiff was required to lift and move objects from one place to another. (Id. ¶ 11.)

Throughout Vagnoni's tenure with the Matteson store, Sears had policies in effect that prohibited employees from stealing, lying, violating company policies and conducting a business in competition with Sears. (Id. ¶ 15a.)[2] Any employee who violated these policies was subject to termination. (Id.)[3]

From October 13 through 17, 1997, when he was on vacation from Sears, plaintiff operated a booth at the Covered Bridge Flea Market in Veedersburg, Indiana where he offered a variety of tools, including Sears Craftsman tools, for sale or barter. (Id. ¶¶ 16-19, 23; Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 7a-b.) Though some were in their original packaging, plaintiff says that all of the tools he displayed at the flea market were used tools that he had refurbished. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 4-5, 7a, 9.)

When Sears heard about plaintiff's booth, Glenn Skinner, asset protection manager for the Matteson store, and Pat Gallo, regional asset protection manager, went to the flea market to investigate. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 28.) Skinner went to plaintiff's booth and saw what he thought were new Craftsman tools on display. (Id. ¶ 32.) Gallo purchased a number of those tools from plaintiff. (Id. ¶ 34a-b.) Based on his observations and Gallo's purchases, Skinner concluded that plaintiff was selling new Craftsman tools at the flea market. (Id. ¶ 37.) Skinner included that conclusion in his investigation report, copies of which he gave to Chris Dyson, the Matteson store

---

[2]Plaintiff denied this fact statement without any citation to the record. By operation of Local Rule 56.1(b)(3)(B), therefore, he is deemed to have admitted it.

[3]See n.2.

-2-

manager, Casey Reilly, investigations manager for Sears, and Harry Geller, the district human resources manager. (Id. ¶¶ 13, 36a.)

Plaintiff returned to work after his vacation on October 21, 1997. (Id. ¶ 41.) He did not stay there long, however, as Skinner told him to go home, gather receipts for the tools he displayed at the flea market and return to the store for a meeting with Skinner and Gallo. (Id. ¶ 42.) Plaintiff said he would attend a meeting, but only if his attorney or a family member could attend with him. (Def.'s Resp. Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 14a.) Sears refused to allow a third party to be present, so the meeting never took place. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶¶ 47-49.)

On October 23, 1997, plaintiff was examined by Dr. Cruz, a cardiologist who had been treating him for heart disease since 1989. (Def.'s LR 56.1(a)(3) Stmt., Ex. L, Cruz Dep. at 20, 34-35.) After that examination, Dr. Cruz wrote a note to Sears that said plaintiff should not work pending further evaluation, which was scheduled for October 30, 1997. (Id. at 37-39; Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 69.)

On October 30, 1997, when Dr. Cruz examined plaintiff, he discovered that plaintiff had had a heart attack and concluded that he could not return to work. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 70.) Dr. Cruz wrote a note to Sears that said plaintiff should be on medical leave of absence until further notice. (Id. ¶ 71.)

On November 21, 1997, Dr. Cruz sent Sears a physician's certification stating that as of October 22, 1997, plaintiff was permanently disabled and could not return to work. (Id. ¶¶ 72-77.)

In December 1997, plaintiff and his wife met with Dyson and Rose Pagliero, Sears human resource specialist. (Id. ¶ 52.)[4] After the meeting, Dyson recommended that plaintiff be terminated

---

[4] See n.2.

for operating an enterprise that created a conflict of interest and for violating company policy. (Id. ¶ 55.) Dyson based that recommendation on Skinner's report of the flea market investigation. (Id. ¶ 58.) Dyson told plaintiff, however, that "he would receive full benefits." (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 52a.)

In February 1988, plaintiff received a letter from Dyson terminating his employment as of February 14, 1998. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 61.) The letter said that he was being discharged "[d]ue to the circumstances involving an investigation, and the attempts to conduct a formal interview with you on the matter of your 'failure to adhere to company policy.'" (Def.'s LR 56.1(a)(3) Stmt., Ex., I, Carol Vagnoni Dep., Ex. 1, 2/13/98 Letter to David Vagnoni from Dyson.) The letter also said that Sears had elected not to pay plaintiff short-term disability benefits "based on the information involved in this situation." (Id.)

Plaintiff contends that Sears discharged him because of his disability and to prevent him from collecting pension and short-term disability ("STD") benefits from the company.[5]

## The Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth

---

[5] In his brief, plaintiff also suggests that Sears fired him to prevent him from collecting long-term disability benefits. (See Pl.'s Responsive Mem. Opp'n Def.'s Mot. Summ. J. at 6.) Plaintiff did not raise this claim in his complaint, however, and he may not do so now. Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").

of the matters asserted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. Id.

## Discussion

Plaintiff contends that defendant violated the ADA when it: (1) refused to accommodate his disability; (2) interfered with the exercise of his ADA rights; and (3) discharged him.[6] The ADA prohibits discrimination against "qualified individual[s] with a disability." 42 U.S.C. § 12112(a). "The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Thus, there must be some evidence in the record to suggest that plaintiff can, with or without a reasonable accommodation, perform the essential functions of the merchandise associate position, if he is to defeat this motion. See Miller v. Illinois Dept. of Corrections, 107 F.3d 483, 485 (7th Cir. 1997) (noting that plaintiff who cannot perform the essential functions of the job has no right to relief under ADA).

Unfortunately for plaintiff, there is no such evidence. In fact, the record conclusively establishes the opposite, that plaintiff could not, even with an accommodation, perform the essential functions of his position with Sears when he was discharged. As plaintiff admits, his own physician certified that: (1) his heart disease rendered him permanently and totally disabled as of October 22,

---

[6]The last two claims are functionally equivalent as plaintiff claims Sears interfered with the exercise of his ADA rights by discharging him. (See Compl. ¶¶ 49-50.)

-5-

1997; and (2) from that date forward, he was unable to perform the merchandise associate job or any other work. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶¶ 72-82.) Because the record establishes that plaintiff was not a "qualified individual with a disability" when he was discharged, his discriminatory discharge claim fails.

Plaintiff fares no better with his accommodation claim. If the claim is based on Sears' failure to place plaintiff on STD in October 1997, as his EEOC charge states, (see Compl., Ex. A), it fails because plaintiff was not a "qualified individual with a disability," at that time. If the claim is based on Sears' alleged failure to give plaintiff help when he sought it in 1995 and 1996, as plaintiff's summary judgment materials suggest, (see Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 3a; Pl.'s Responsive Mem. Opp'n Def.'s Mot. Summ. J. at 4-5), it is time-barred. See Conley v. Village of Bedford Park, 215 F.3d 703, 710 (7th Cir. 2000) (affirming dismissal of ADA claim on statute of limitations grounds because plaintiff did not file EEOC charge within 300 days of the allegedly discriminatory act); (Compl., Ex. A, EEOC Charge (indicating that plaintiff filed the charge on May 19, 1998, more than 300 days after alleged accommodation requests were rejected)). In short, no matter how we construe it, Sears is entitled to judgment as a matter of law on plaintiff's accommodation claim.

We turn now to plaintiff's ERISA claims. Plaintiff alleges that Sears' STD and pension plans are governed by ERISA and that Sears fired him to prevent him from obtaining benefits under those plans, a violation of section 510 of the statute. (Compl. ¶¶ 55-62); 29 U.S.C. § 1140. Though Sears admits that its pension plan is governed by ERISA, it contends that its STD plan is not. (See Def.'s LR 56.1(a)(3) Stmt. ¶¶ 88-89.) Unless there is some evidence in the record to suggest that the STD plan is governed by ERISA, plaintiff's claim with respect to that plan must be dismissed. Bilow v. Much, Shelist, Denenberg, Ament & Rubenstein, P.C., Nos. 00-2467, 00-2587, 00-3098, 2001 WL

1381076, at *6 (7th Cir. Nov. 7, 2001) (affirming dismissal of claim for violation of section 510 of ERISA because the challenged plan was not governed by the statute).

In relevant part, ERISA defines a welfare plan, which the STD plan is alleged to be, as

> Any plan, fund, or program which was . . . established or maintained by an employer or employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . .

29 U.S.C. § 1002(1). The STD plan was maintained by Sears for the purpose of providing the participants with disability benefits. It, therefore, falls within this definition. (See Def.'s LR 56.1(a)(3) Stmt., Ex. J, Pagliero Aff., Ex. 3, Sears' STD Policy at Vagnoni 0229.)

By regulation, however, the Secretary of Labor has exempted from ERISA certain benefit programs, called "payroll practices," that fall within the statute's scope. 29 C.F.R. § 2510.3-1(b). One of the payroll practices deemed exempt from ERISA is "[p]ayment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons (such as pregnancy, a physical examination or psychiatric treatment)." 29 C.F.R. § 2510.3-1(b)(2).[7] It is undisputed that Sears paid STD benefits entirely from its own assets. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 85; Def.'s LR 56.1(a)(3) Stmt., Ex. J, Pagliero Aff., Ex. 3, Sears' STD Policy at Vagnoni 0231.) As such, Sears' STD plan is a payroll practice, not an ERISA plan. See Dep't Labor Op. Letter No. 85-23A, 1985 WL 32814, at *2 (June 10, 1985) (concluding that Vulcan Lead Products Company's short-term disability plan was a payroll practice, not an ERISA plan,

---

[7]Plaintiff does not challenge the reasonableness of this regulation.

because "payments are made from the employer's general assets, are no greater than an employee's normal compensation, and are due to illness or injury resulting in an employee's absence from duty."). Because the STD plan is not governed by ERISA, Sears is entitled to judgment as a matter of law on plaintiff's claim that Sears discharged him to prevent him from collecting STD benefits.

The situation is a bit different with the pension plan. There is no dispute that Sears' pension plan is governed by ERISA. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 89.) There is also no dispute, however, that plaintiff is receiving pension benefits from Sears. (Id. ¶ 93.) Thus, the record squarely refutes plaintiff's allegation that Sears discharged him to prevent him from collecting those benefits.

Plaintiff can salvage this claim, however, if he can produce evidence that Sears fired him, instead of placing him on STD, *to reduce* the amount of benefits it would have to pay him. Under Sears' pension plan, the amount of an employee's benefits is tied to his years of credited service. (See Def.'s LR 56.1(a)(3) Stmt., Ex. J, Pagliero Aff., Ex. 5, Sears Pension Plan Summary Plan Description at Vagnoni 0278.) Eligible employees "earn credited service for as long as [they] remain actively employed." (Id. at Vagnoni 0300.) Thus, plaintiff can defeat this motion if he can show that: (1) employees on STD remain "actively employed" and continue to accrue credited service; (2) the credited service he would have accrued while on STD would have increased the amount of benefits to which he is entitled; and (3) Sears' proffered reason for discharging him is a pretext.

Once again, however, the evidence is lacking. Neither Sears' STD policy nor its pension plan states whether credited service continues to accrue while an employee is on STD. (See Def.'s LR 56.1(a)(3) Stmt., Ex. J, Pagliero Aff., Exs. 3, 4 & 5.) Moreover, even if we assume that it does, there is no evidence to suggest that the credited service plaintiff would have accrued over the twenty-week maximum STD period would have increased the amount of pension benefits due him. Because there

is no evidence to indicate that the amount of plaintiff's pension benefits would have been any higher had Sears placed him on STD instead of discharging him, plaintiff's ERISA claim fails.[8]

That leaves plaintiff's defamation claim. Having dismissed plaintiff's federal claims, however, we decline to exercise our supplemental jurisdiction over this state-law claim. 28 U.S.C. § 1367(c)(3).

## Conclusion

For the reasons set forth above, there is no genuine issue of material fact on Vagnoni's ADA and ERISA claims and Sears is entitled to judgment as matter of law on those claims. Accordingly, Sears' motion for summary judgment on the claims in Counts I-IV of plaintiff's complaint is granted. The Court declines to exercise its supplemental jurisdiction over the defamation claim Vagnoni asserts against Sears in Count V of the complaint, which is dismissed without prejudice to refiling in state court. This is a final and appealable order.

**ENTER:**

_____
**UNITED STATES DISTRICT JUDGE**

DATED: 1-14-02

---

[8]Given plaintiff's lack of proof on this issue, we need not address pretext.